UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CYNTHIA M. LA COUR,              )    Case No. CV 10-1800 JC
                                 )
                Plaintiff,       )
                                 )    MEMORANDUM OPINION
        v.                       )
                                 )
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social           )
Security,                        )
                                 )
                Defendant.       )
_____    )

## I.    SUMMARY

On March 12, 2010, plaintiff Cynthia M. La Cour ("plaintiff") filed a
Complaint seeking review of the Commissioner of Social Security's denial of
plaintiff's application for benefits.  The parties have consented to proceed before a
United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; March 17, 2010 Case Management Order ¶ 5.

///

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[1]

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 2, 2006, plaintiff filed an application for Disability Insurance Benefits.  (Administrative Record ("AR") 11).  Plaintiff asserted that she became disabled on March 1, 2003, due to a neck and spinal injury, carpal tunnel syndrome, heart problems and high blood pressure.  (AR 11, 108).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 16, 2007.  (AR 33-65).

On February 7, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 11, 19).  Specifically, the ALJ found: (1) plaintiff suffered from severe impairments involving the cervical spine and upper extremities (AR 12, 19); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 13, 19); (3) plaintiff retained the residual functional capacity to perform light work with certain additional limitations[2] (AR 13, 19); (4) plaintiff could not perform her past relevant work (AR 17, 19); (5) there are jobs that exist in significant numbers

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]More specifically, the ALJ determined that plaintiff retained the residual functional capacity to lift/carry up to 20 pounds occasionally and 10 pounds frequently, sit for about six hours in an eight-hour workday, stand and/or walk for about six hours in an eight-hour workday, with no repetitive motions of the neck or overhead work, no forceful gripping, grasping, bilaterally, no prolonged sitting or standing, and no more than frequent keyboarding.  (AR 13, 19).

1   in the national economy that plaintiff could perform (AR 18, 19); and

2   (6) plaintiff's testimony "overstate[d] the intensity of her symptoms" (AR 14).

3          The Appeals Council denied plaintiff's application for review.  (AR 1-3).

4   **III.   APPLICABLE LEGAL STANDARDS**

5          **A.     Sequential Evaluation Process**

6          To qualify for disability benefits, a claimant must show that she is unable to

7   engage in any substantial gainful activity by reason of a medically determinable

8   physical or mental impairment which can be expected to result in death or which

9   has lasted or can be expected to last for a continuous period of at least twelve

10  months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C.

11  § 423(d)(1)(A)).  The impairment must render the claimant incapable of

12  performing the work she previously performed and incapable of performing any

13  other substantial gainful employment that exists in the national economy.  Tackett

14  v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

15         In assessing whether a claimant is disabled, an ALJ is to follow a five-step

16  sequential evaluation process:

17         (1)    Is the claimant presently engaged in substantial gainful activity?  If

18                so, the claimant is not disabled.  If not, proceed to step two.

19         (2)    Is the claimant's alleged impairment sufficiently severe to limit

20                her ability to work?  If not, the claimant is not disabled.  If so,

21                proceed to step three.

22         (3)    Does the claimant's impairment, or combination of

23                impairments, meet or equal an impairment listed in 20 C.F.R.

24                Part 404, Subpart P, Appendix 1?  If so, the claimant is

25                disabled.  If not, proceed to step four.

26         (4)    Does the claimant possess the residual functional capacity to

27                perform her past relevant work?  If so, the claimant is not

28                disabled.  If not, proceed to step five.

1
2
3
4
5

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow her to adjust to other work that exists in
        significant numbers in the national economy? If so, the
        claimant is not disabled. If not, the claimant is disabled.

6   Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
7   Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

8        The claimant has the burden of proof at steps one through four, and the
9   Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262
10  F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679
11  (claimant carries initial burden of proving disability).

12       **B.     Standard of Review**

13       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
14  benefits only if it is not supported by substantial evidence or if it is based on legal
15  error. Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.
16  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457
17  (9th Cir. 1995)). Substantial evidence is "such relevant evidence as a reasonable
18  mind might accept as adequate to support a conclusion." Richardson v. Perales,
19  402 U.S. 389, 401 (1971) (citations and quotations omitted). It is more than a
20  mere scintilla but less than a preponderance. Robbins, 466 F.3d at 882 (citing
21  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

22       To determine whether substantial evidence supports a finding, a court must
23  "'consider the record as a whole, weighing both evidence that supports and
24  evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
25  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
26  953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming
27  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
28  of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

4

**IV.   DISCUSSION**

Plaintiff alleges that the ALJ erred because she:  (1) improperly rejected the opinions from two of plaintiff's treating physicians; (2) inadequately evaluated the credibility of plaintiff's subjective complaints; (3) improperly evaluated the opinions of plaintiff's workers' compensation physicians; and (4) posed an inadequate hypothetical question to the vocational expert.  (Plaintiff's Motion at 2-25).  The plaintiff is not entitled to a remand or reversal on any of these grounds.

**A.   The ALJ Properly Evaluated the Opinions of Treating Physicians Bass and Ruman**

Plaintiff contends that the ALJ improperly rejected the opinions of Drs. Arnold Bass and Angela Ruman, plaintiff's treating physicians at UCLA Medical Center.  (Plaintiff's Motion at 2-9).  The Court disagrees.

**1.   Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided.  Courts distinguish among the opinions of three types of physicians:  those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians").  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater

_____

[3]Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

1  opportunity to know and observe the patient as an individual." Morgan v.

2  Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

3  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

4         The treating physician's opinion is not, however, necessarily conclusive as

5  to either a physical condition or the ultimate issue of disability. Magallanes v.

6  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

7  759, 761-62 & n.7 (9th Cir. 1989)). Where a treating physician's opinion is not

8  contradicted by another doctor, it may be rejected only for clear and convincing

9  reasons. Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

10  quotations omitted). The ALJ can reject the opinion of a treating physician in

11  favor of a conflicting opinion of another examining physician if the ALJ makes

12  findings setting forth specific, legitimate reasons for doing so that are based on

13  substantial evidence in the record. Id. (citation and internal quotations omitted);

14  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

15  setting out detailed and thorough summary of facts and conflicting clinical

16  evidence, stating his interpretation thereof, and making findings) (citations and

17  quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

18  "magic words" to  reject a treating physician opinion – court may draw specific

19  and legitimate inferences from ALJ's opinion). "The ALJ must do more than offer

20  his conclusions." Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). "He

21  must set forth his own interpretations and explain why they, rather than the

22  [physician's], are correct." Id. "Broad and vague" reasons for rejecting the

23  treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599,

24  602 (9th Cir. 1989).

25  ///

26  ///

27  ///

28  ///

1

**2.     Analysis**[4]

2

**a.     Dr. Bass**

3     Plaintiff's claim that the ALJ erroneously rejected Dr. Bass' opinions lacks

4     merit.

5     On November 8, 2007, Dr. Bass completed a Cardiac Residual Functional

6     Capacity Questionnaire in which he opined, *inter alia*, that plaintiff (i) has

7     "marked limitation of physical activity, as demonstrated by fatigue, palpitation,

8     dyspnea, or anginal discomfort on <u>ordinary</u> physical activity, even though

9     [plaintiff] is comfortable at rest" (AR 365) (emphasis added); (ii) was still

10    suffering from claudication[5] and experienced "anginal pain" during "heavy

11    exertion" (AR 364); (iii) "seldom" experienced cardiac symptoms severe enough

12    to interfere with attention and concentration (AR 365); (iv) would need to take

13    unscheduled breaks "whenever she needs" and for "whatever [period of time] she

14    needs" (AR 366); (v) might need to elevate her legs with prolonged sitting (AR

15    366); (vi) could lift/carry less than ten pounds frequently, and ten or twenty

16    pounds occasionally (AR 366); and (vii) had no other limitations that would affect

17    plaintiff's ability to work at a regular job on a sustained basis (AR 367).

18    ///

19

20    _____

21    [4]As plaintiff correctly notes, it appears that Dr. Bass was the only physician to opine
      about plaintiff's limitations related to peripheral vascular disease. (AR 364-67).  Accordingly,

22    the Court finds such opinions of Dr. Bass uncontradicted.  Nonetheless, as discussed below, the
      ALJ properly rejected Dr. Bass' opinions for clear and convincing reasons.  <u>See</u> Orn, 495 F.3d at

23    632 (uncontradicted treating physician's opinion properly rejected for clear and convincing
      reasons).  In contrast, contrary to plaintiff's suggestion, it appears that Dr. Ruman opined as to

24    plaintiff's overall physical limitations.  (AR 368-74).  As discussed below, such opinions were
      contradicted, and therefore the ALJ properly could, and did reject Dr. Ruman's opinions for

25    specific and legitimate reasons based on substantial evidence.  (AR 368-74).

26

27    [5]"Intermittent claudication" is pain associated with peripheral arterial disease, usually
      brought on by physical exertion.  <u>See</u> Peripheral Arterial Disease of the Legs - Symptoms,

28    WebMD website <u>available at http://www.webmd.com/heart-disease/ tc/peripheral-arterial
      -disease-of-the-legs-symptoms</u>.

1    First, the ALJ was not required to discuss at length medical evidence which

2  he did not reject, and which was cumulative.  See Howard ex rel. Wolff v.

3  Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citations omitted).  An ALJ must

4  provide an explanation only when he rejects "significant probative evidence."  See

5  Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted).

6  Here, Dr. Bass noted that plaintiff had "marked limitation of physical activity"

7  during ordinary physical activity, experienced claudication and pain during

8  physical exertion, and might need to elevate her legs with prolonged sitting (AR

9  364-66).  Plaintiff fails to demonstrate that such findings constitute significant or

10  probative evidence that is not already accounted for in the ALJ's residual

11  functional capacity assessment, which, among other things, limits plaintiff to

12  "light work" (e.g., work involving less than "ordinary" physical exertion) and

13  precludes plaintiff from all prolonged sitting and standing, thus obviating the need

14  for plaintiff to elevate her legs in a particular job.

15    Second, with respect to Dr. Bass' opinions that plaintiff would need to take

16  unscheduled breaks of unspecified frequency and duration, and that plaintiff was

17  at all limited in her ability to lift and carry beyond the ALJ's residual functional

18  capacity assessment, as the ALJ accurately noted, such opinions are conclusory

19  and conflict with or are unsupported by Dr. Bass' own treatment notes.  For

20  example, as the ALJ noted, Dr. Bass's treatment records from follow-up

21  appointments after plaintiff's 2007 cardiovascular surgery reflect essentially

22  normal examinations and note that plaintiff was "doing well from a cardiovascular

23  perspective."  (AR 17, 297-98, 300-01, 303, 362).  Therefore, to the extent the

24  ALJ rejected Dr. Bass' opinions, she properly did so for clear and convincing

25  reasons based on substantial evidence.  See Bayliss v. Barnhart, 427 F.3d 1211,

26  1216 (9th Cir. 2005) (A discrepancy between a physician's notes and recorded

27  observations and opinions and the physician's assessment of limitations is a clear

28  and convincing reason for rejecting the opinion.); see also Connett v. Barnhart,

8

1  340 F.3d 871, 875 (9th Cir. 2003) (affirming ALJ's rejection of physician's

2  opinion as unsupported by physician's treatment notes); cf. Tonapetyan v. Halter,

3  242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ need not accept a treating

4  physician's opinions that are conclusory and brief, or unsupported by clinical

5  findings or physician's own treatment notes).

6         Accordingly, a remand or reversal is not warranted on this basis.

7                          **b.    Dr. Ruman**

8         Plaintiff's claim that the ALJ erroneously rejected Dr. Ruman's opinions

9  lacks merit.

10        On November 13, 2007, Dr. Ruman completed a Physical Residual

11  Functional Capacity Questionnaire which reflects, in essence, that plaintiff is

12  unable to do even sedentary work.  (AR 17, 368-74).  Dr. Ruman opined, *inter*

13  *alia*, that plaintiff (i) could not lift/carry anything over ten pounds (AR 372); (ii)

14  needed to elevate her legs above heart level with prolonged sitting (AR 372); and

15  (iii) would miss work more than three times per month due to her impairments

16  (AR 374).

17        First, as noted above, the ALJ was not required to discuss at length Dr.

18  Ruman's opinion that plaintiff needed to elevate her legs above heart level with

19  prolonged sitting since the ALJ's residual functional capacity assessment already

20  accounted for such limitation.  See Howard, 341 F.3d at 1012 (citations omitted).

21        Second, to the extent the ALJ rejected Dr. Ruman's other opinions as to

22  plaintiff's limitations, she did so for specific and legitimate reasons based on

23  substantial evidence in the record.  Here, the form Dr. Ruman submitted contained

24  essentially check-the-box opinions with no explanation of the doctor's findings as

25  to plaintiff's physical limitations.  (AR 368-74).  None of the meager treatment

26  records from Dr. Ruman supports the conclusory opinions.  (AR 357-59).  Nor do

27  treatment records from UCLA Medical Center, where plaintiff purportedly

28  received treatment from Dr. Ruman, provide any support for such significant

9

physical limitations.  (AR 296-356).  The ALJ properly rejected such conclusory and unsupported opinions.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by record as a whole or by objective medical findings); Connett, 340 F.3d at 875 (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"); Tonapetyan, 242 F.3d at 1149; see also Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (holding that the ALJ properly rejected doctors' opinions because they were check-off reports that did not contain any explanation of the bases of their conclusions); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Finally, the ALJ properly rejected Dr. Ruman's opinions in favor of the conflicting assessments of Dr. Brourman, another of plaintiff's treating physicians. Even if, as plaintiff asserts, the ALJ improperly rejected portions of Dr. Brourman's opinions, such opinions still significantly conflict with the more severe limitations imposed by Dr. Ruman.  It was the sole province of the ALJ to resolve any such conflict in the medical opinion evidence.  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted); See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

Accordingly, a remand or reversal is not warranted on this basis.

### B.    The ALJ Properly Evaluated Plaintiff's Credibility

#### 1.    Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner.  Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).  If the ALJ's interpretation of the claimant's testimony is reasonable
///

1   and is supported by substantial evidence, it is not the court's role to "second-

2   guess" it.  Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

3          An ALJ is not required to believe every allegation of disabling pain or other

4   non-exertional impairment.  Orn, 495 F.3d at 635 (citing Fair v. Bowen, 885 F.2d

5   597, 603 (9th Cir. 1989)).  If the record establishes the existence of a medically

6   determinable impairment that could reasonably give rise to symptoms assertedly

7   suffered by a claimant, an ALJ must make a finding as to the credibility of the

8   claimant's statements about the symptoms and their functional effect.  Robbins,

9   466 F.3d 880 at 883 (citations omitted).  Where the record includes objective

10  medical evidence that the claimant suffers from an impairment that could

11  reasonably produce the symptoms of which the claimant complains, an adverse

12  credibility finding must be based on clear and convincing reasons.  Carmickle v.

13  Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir.

14  2008) (citations omitted).  The only time this standard does not apply is when

15  there is affirmative evidence of malingering.  Id.  The ALJ's credibility findings

16  "must be sufficiently specific to allow a reviewing court to conclude the ALJ

17  rejected the claimant's testimony on permissible grounds and did not arbitrarily

18  discredit the claimant's testimony."  Moisa v. Barnhart, 367 F.3d 882, 885 (9th

19  Cir. 2004).

20         To find the claimant not credible, an ALJ must rely either on reasons

21  unrelated to the subjective testimony (e.g., reputation for dishonesty), internal

22  contradictions in the testimony, or conflicts between the claimant's testimony and

23  the claimant's conduct (e.g., daily activities, work record, unexplained or

24  inadequately explained failure to seek treatment or to follow prescribed course of

25  treatment).  Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at

26  680-81; Social Security Ruling ("SSR") 96-7p.  Although an ALJ may not

27  disregard such claimant's testimony solely because it is not substantiated

28  affirmatively by objective medical evidence, the lack of medical evidence is a

1  factor that the ALJ can consider in his credibility assessment.  Burch, 400 F.3d at

2  681.

3  **2.    Analysis**

4  Plaintiff contends that the ALJ inadequately evaluated the credibility of her

5  subjective complaints.  (Plaintiff's Motion at 10-18).  The Court disagrees.

6  First, the ALJ properly discredited plaintiff's subjective complaints due to

7  conflicts among plaintiff's own statements and testimony to the Social Security

8  Administration and statements made to medical providers.  See Light v. Social

9  Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in

10  weighing plaintiff's credibility, ALJ may consider "inconsistencies either in

11  [plaintiff's] testimony or between his testimony and his conduct"); see also Fair,

12  885 F.2d at 604 n.5 (9th Cir.1989) (ALJ can reject pain testimony based on

13  contradictions in plaintiff's testimony).  As the ALJ noted, although plaintiff

14  alleges disabling pain in her wrist, as late as May 2007, plaintiff acknowledged

15  being able to "grip, grasp, squeeze, do find manipulation, but not too good with

16  her right hand."  (AR 14) (citing AR 253).  The ALJ also noted that, while

17  plaintiff alleges "significant lower extremity symptoms that pre-existed her neck

18  surgery in January 2005," during an agreed medical examination in December

19  2005 she denied having difficulty standing or walking, and in an Exertional Daily

20  Activities Questionnaire dated September 17, 2006, plaintiff estimated that each

21  day she would walk two miles within her home and while doing errands.  (AR 14)

22  (citing AR 123, 266).

23  Second, the ALJ properly discounted plaintiff's subjective complaints as

24  inconsistent with plaintiff's conduct.  See Thomas, 278 F.3d at 958-59

25  (inconsistency between the claimant's testimony and the claimant's conduct

26  supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d

27  1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and

28  actions cited as a clear and convincing reason for rejecting the claimant's

12

1   testimony).  For example, in 2005, plaintiff was able to return to work "at the
2   substantial gainful activity level," working upwards of six hours per day, and
3   stopped working only because her employer was unwilling to continue to
4   accommodate plaintiff's restrictions for the particular job.  (AR 12, 14, 16).  While
5   plaintiff contends that her return to work in 2005 is not evidence of her ability to
6   work on a full-time basis (Plaintiff's Motion at 17-18), this Court will not second-
7   guess the ALJ's reasonable interpretation that it is, even if such evidence could
8   give rise to inferences more favorable to plaintiff.

9          Third, the ALJ properly discounted plaintiff's complaints regarding the
10  severity of her pain as inconsistent with a conservative treatment plan.  See
11  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered,
12  as part of credibility evaluation, treating physician's failure to prescribe, and
13  claimant's failure to request, medical treatment commensurate with the
14  "supposedly excruciating" pain alleged, and the "minimal, conservative
15  treatment") (citing Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en
16  banc)); see Fair, 885 F.2d at 604 (ALJ permissibly considered discrepancies
17  between the claimant's allegations of "persistent and increasingly severe pain" and
18  the nature and extent of treatment obtained).  The ALJ noted that, at the outset,
19  plaintiff received conservative pain medication and that "[plaintiff] ha[d] not been
20  prescribed or deemed in need of an assistive device."  (AR 14).  Moreover, the
21  ALJ properly considered plaintiff's failure to "seek treatment or to follow a
22  prescribed course of treatment" in assessing her credibility.  See Smolen v. Chater,
23  80 F.3d 1273, 1284 (9th Cir. 1996).  As the ALJ noted, although Dr Fish, a pain
24  management specialist, recommended epidural injections and pump medications,
25  plaintiff declined such treatment for her pain.  (AR 16) (citing Exhibit 13F [AR
26  268]).  While an ALJ may not reject symptom testimony where a claimant
27  ///
28  ///

provides "evidence of a good reason for not taking medication," <u>Smolen</u>, 80 F.3d at 1284 (citations omitted), plaintiff has failed to present such a sufficient reason.[6]

Finally, an ALJ may discredit a plaintiff's subjective symptom testimony in part based on conflicts with objective medical evidence.  <u>See</u> <u>Burch</u>, 400 F.3d at 681; <u>Rollins</u>, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  Here, the ALJ reasonably concluded that plaintiff's subjective symptoms did not limit plaintiff's ability to work since they were adequately managed when plaintiff took prescribed pain treatments.  (AR 14).  The ALJ also noted that, particularly after her neck surgery, plaintiff has been "neurologically intact," and "demonstrated excellent range of cervical spine motion without pain."  (AR 14).

Accordingly, a remand or reversal is not warranted on this basis.

## C.    The ALJ Properly Evaluated the Medical Opinions From Plaintiff's Workers' Compensation Claim Physicians

Plaintiff contends that the ALJ failed properly to evaluate the medical opinions prepared in connection with plaintiff's workers' compensation claim by Dr. Steven Brourman, a treating physician, and Dr. Alexander Angerman, the Agreed Medical Examiner.  (Plaintiff's Motion at 18-23).  Plaintiff's contentions lack merit.[7]

---

[6]Plaintiff argues that the ALJ did not allow her to provide a reason for rejecting prescribed pain treatment.  (Plaintiff's Motion at 16-17).  Plaintiff's argument is unconvincing, particularly since she had such an opportunity before this Court, but still failed to provide any sufficient reason.

[7]The Court rejects plaintiff's suggestion that the ALJ failed to consider the differences between the workers' compensation and social security statutory schemes when evaluating the opinions of Drs. Brourman and Angerman.  (Plaintiff's Motion at 22-23).  An ALJ must evaluate medical opinions issued in a workers' compensation context in the same manner as with any

(continued...)

### 1.   Dr. Brourman

Dr. Brourman was plaintiff's primary treating physician in connection with her workers' compensation claim.  (AR 242).  In a January 18, 2006 Permanent and Stationary Status Report, Dr. Brourman opined that plaintiff "should avoid heavy lifting, repetitive bending, twisting or torquing of the neck," and with respect to her right upper extremity, should avoid "repetitive forceful gripping, grasping, pushing, pulling, squeezing, twisting, torquing and fine manipulative tasks."  (AR 245).

Here, plaintiff fails to demonstrate that Dr. Brourman's opinions constitute significant or probative evidence that is not already accounted for by the ALJ.  As the ALJ noted, the ALJ's residual functional capacity assessment for plaintiff – which precludes plaintiff from heavy lifting, repetitive neck motions, forceful gripping and grasping with either hand, and limits plaintiff to only frequent keyboarding – reasonably approximates the limitations assigned by Dr. Brourman.  (AR 15).  This Court will not second-guess the ALJ's reasonable interpretation of

---

[7](...continued)
other medical opinion evidence.  Booth v. Barnhart, 181 F. Supp. 2d 1099, 1104, 1106 (C.D. Cal. 2002); Desrosiers v. Secretary of Health & Human Services, 846 F.2d 573, 576 (9th Cir. 1988)).  Although the ALJ's decision need not contain an explicit "translation," it must, nonetheless, reflect that the ALJ properly considered the pertinent distinctions between state workers' compensation terminology and the relevant Social Security disability terminology.  Booth, 181 F. Supp. 2d at 1106; see, e.g., Desrosiers, 846 F.2d at 576 (finding ALJ interpretation of treating physician's opinion erroneous where record clear that ALJ affirmatively failed to consider distinction between categories of work under social security disability scheme versus workers' compensation scheme).  Here, evidence that the ALJ was well aware of the relevant statutory distinctions can be seen throughout the ALJ's decision.  For example, the ALJ expressly acknowledged that the "opinions as to work causation" in the medical reports could be relevant to a workers' compensation claim, but were "not a critical factor" for Social Security purposes.  (AR 14).  The ALJ also recognized that the opinions of Drs. Brourman and Angerman addressed plaintiff's "temporary total disability (TTD) status" – one term used to rate disability for California workers' compensation claims.  (AR 14-15); see, e.g., Cal. Labor Code § 4653 ("Temporary Total Disability").  This Court is satisfied that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence.

1  the medical evidence, even if such evidence could give rise to inferences more

2  favorable to plaintiff.

3      To the extent the ALJ rejected other, more sever limitations in Dr.

4  Brourman's opinions,[8] she did so for specific and legitimate reasons based on

5  substantial evidence.  For example, as the ALJ noted, in mid-2003 plaintiff

6  complained of numbness and pain in her right hand and elbow, and on August 11,

7  2003 received right carpal tunnel release and right elbow surgery from Dr.

8  Brourman.  (AR 15, 177, 243, 279).  In spite of such surgery, by December 2003,

9  Dr. Brourman reported that plaintiff could "work in a light duty capacity."  (AR

10  15, 279).  In 2004, records show that plaintiff's complaints shifted from her arm to

11  her neck, with plaintiff reporting the same pain level for the neck and her arm, but

12  also reporting only chiropractic treatment, no physical therapy, epidural injections,

13  or neck surgery.  (AR 15, 178).  Here, a reasonable inference based on the ALJ's

14  thorough discussion and evaluation of Dr. Brourman's treatment reports and the

15  record medical evidence, is that the ALJ found any more severe limitations caused

16  by plaintiff's surgery to be short lived, and thus not probative of any impairment

17  that would satisfy the durational requirements applicable to social security

18  disability cases.  See Thomas, 278 F.3d at 957; Magallanes, 881 F.2d at 751, 755.

19      Accordingly, a remand or reversal is not warranted on this basis.

20              **2.    Dr. Angerman**

21      Dr. Alexander Angerman was the agreed medical examiner for plaintiff's

22  workers' compensation claim.  (AR 183).  In a December 1, 2005 report from an

23  Agreed Medical Examination of plaintiff, Dr. Angerman opined with respect to

24  impairments of plaintiff's cervical spine that plaintiff should, among other

25

26      [8]After stating that her residual functional capacity assessment "approximates" the
limitations assigned by Dr. Brourman, the ALJ noted that "[plaintiff] was never precluded from

27  the ALJ assigned residual functional capacity for 12 continuous months (including as relates to
the cervical spine)," in effect rejecting any more severe limitations in Dr. Brourman's opinions as

28  not meeting the durational requirements applicable to social security disability cases.  (AR 15).

restrictions, be precluded from work requiring repetitive motions of the cervical spine and any overhead work activities, and be permitted to shift positions as needed when sitting or weight bearing.  (AR 16, 208-09).  Due to impairments in plaintiff's right elbow and wrist, Dr. Angerman recommended "prophylactic work restrictions" precluding plaintiff from performing heavy lifting and repetitive or forceful gripping, grasping, squeezing, torquing, pushing, pulling, prolonged find manipulation and keyboarding activities.  (AR 16, 210).  The ALJ rejected Dr. Angerman's opinions to the extent they imposed limitations more severe than the ALJ's residual functional capacity assessment.  (AR 16).  The Court finds no error in the ALJ's assessment of Dr. Angerman's opinions.

First, plaintiff fails to demonstrate that Dr. Angerman's restrictions related to plaintiff's cervical spine are not already accounted for in the ALJ's residual functional capacity assessment, which expressly precludes plaintiff from "repetitive motions of the neck" (*i.e.* cervical spine) and from "overhead work." (AR 13, 19).  The ALJ also precludes plaintiff from "prolonged sitting or standing," which would reasonably account for Dr. Angerman's opinion that plaintiff should be permitted to shift positions as needed.  Again, the Court cannot second-guess the ALJ's reasonable interpretation of the medical evidence.

Second, the ALJ was not required to explain the decision to omit from plaintiff's residual functional capacity any of Dr. Angerman's limitations based on impairments in plaintiff's right elbow and wrist.  An ALJ must provide an explanation only when he rejects "significant probative evidence."  See Vincent, 739 F.2d at 1394-95 (citation omitted).  Here, Dr. Angerman's work restrictions imposed due to impairments in plaintiff's right elbow and wrist were neither significant nor probative evidence.  As the ALJ noted, Dr. Angerman suggested "prophylactic restrictions."  (AR 16).  Since prophylactic measures are intended to prevent injury, they do not reflect existing limitations.  Evidence that a physician recommended prophylactic restrictions in connection with a workers'

17

1  compensation case, on its own, would not be probative of an existing limitation

2  that an ALJ would be required to consider in connection with evaluating residual

3  functional capacity.  Cf. Gelfo v. Lockheed Martin Corp., 140 Cal. App. 4th 34, 48

4  (2006) (In workers' compensation parlance, physicians recommend "prophylactic"

5  restrictions for a worker who reaches "permanent and stationary" disability in

6  order "to help avoid re-injury."); see also Mattox v. Astrue, 2008 WL 761073, at

7  *8 n.9 (E.D. Cal. March 17, 2008) ("[T]he standards for disability in the worker's

8  compensation context are quite different from the standards utilized here to

9  determine whether plaintiff can do any other type of work."), reversed on other

10 grounds, 374 Fed. Appx. 740 (9th Cir. 2010).  Consequently, the ALJ was

11 permitted to disregard Dr. Angerman's recommendations that plaintiff follow

12 prophylactic restrictions.

13        Finally, the ALJ properly rejected Dr. Angerman's opinions based on

14 plaintiff's "declining aggressive post-operative pain remedies," her "previous

15 return to her usual work," and "medical reports to the contrary."  See Rollins, 261

16 F.3d at 856 (ALJ properly rejected a treating physician's opinion who prescribed

17 conservative treatment and where the plaintiff's activities and lack of complaints

18 were inconsistent with the physician's disability assessment); Magallanes, 881

19 F.2d  at 751-52 (ALJ may properly reject a medical opinion if it is inconsistent

20 with a plaintiff's demonstrated abilities); Batson, 359 F.3d at 1195 (ALJ may

21 discredit treating physicians' opinions that are conclusory, brief, and unsupported

22 by record as a whole or by objective medical findings).  The conflicting

23 assessment of Dr. Sedgh that plaintiff could, *inter alia*, lift and carry 20 pounds

24 occasionally and 10 pounds frequently, constitutes substantial evidence to support

25 the ALJ's rejection of Dr. Angerman's opinions, because it rested on the

26 consultative physician's own, independent examination of plaintiff.  See, e.g.,

27 Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own

28 ///

1  constituted substantial evidence, because it rested on independent examination of
2  claimant).

3      Accordingly, a remand or reversal is not warranted on this basis.

4      **D.    The ALJ Posed a Complete Hypothetical Question to the**
5           **Vocational Expert**

6      Plaintiff contends that a reversal or remand is appropriate because the ALJ's
7  hypothetical question to the vocational expert was improperly vague.  (Plaintiff's
8  Motion at 23-25).  More specifically, plaintiff alleges that the ALJ's hypothetical
9  question was defective because (a) it failed to describe plaintiff's abilities "on a
10 function-by-function basis"; and (b) the ALJ's use of the terms "repetitive" and
11 "prolonged" to describe limitations on neck motions and sitting/standing,
12 respectively, were inadequate to describe what plaintiff could still do despite her
13 limitations.  (Plaintiff's Motion at 24-25) (citing 20 C.F.R. § 404.1545).   The
14 Court disagrees.

15     Here, the ALJ sufficiently described plaintiff's functional abilities by
16 including in her hypothetical question a limitation to "light work" – a term of art
17 used in Social Security disability cases to describe, by function, a specific set of
18 work-related abilities.  See 20 C.F.R. § 404.4567(b) ("Light Work" defined); SSR
19 85-15 at *6-*7; SSR 83-10 at *5-*6; SSR 83-14 at *4-*5.  In addition, the term
20 "repetitive" – which is used throughout social security law to describe functional
21 abilities – is not at all vague, particularly when stated to a vocational expert.
22 Similarly, the record reflects that the vocational expert clearly understood, based
23 on her professional background, the meaning of the ALJ's limitation on
24 "prolonged" sitting/standing.  At the administrative hearing, the vocational expert
25 testified that the jobs available to plaintiff (or a hypothetical person with plaintiff's
26 characteristics) sufficiently accounted for the ALJ's limitation to no prolonged
27 sitting/standing:  "These jobs are primarily performed in a seated position, but they
28 ///

1  allow for getting up and moving around and . . . would not be considered

2  prolonged sitting." (AR 60).

3       Accordingly, a remand or reversal is not warranted on this basis.

4  **V.      CONCLUSION**

5       For the foregoing reasons, the decision of the Commissioner of Social

6  Security is affirmed.

7       LET JUDGMENT BE ENTERED ACCORDINGLY.

8  DATED:  October 15, 2010

9                                         _____/s/_____

10                                        Honorable Jacqueline Chooljian
                                          UNITED STATES MAGISTRATE JUDGE